UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

                     :

IN RE KINGATE MANAGEMENT          :     Master File No. 09 Civ. 5386
LIMITED LITIGATION                     (DAB)
                     :

This Document Relates To: All Actions

                     :

                     :

------------------------------------------------------------------------ X


# JOINT MEMORANDUM OF LAW IN FURTHER SUPPORT OF ALL DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.  ALL OF PLAINTIFFS' CLAIMS ARE PRECLUDED BY SLUSA ................... 1

    A.  Morrison Creates No SLUSA Loophole for Foreign Plaintiffs ................. 1

    B.  Dabit Rejected Any Requirement that Plaintiffs Themselves Purchase or Sell Covered Securities ........................................................... 2

    C.  SLUSA's "In Connection With" Requirement Is Met Here ...................... 4

    D.  SLUSA Applies to Plaintiffs' Non-Fraud Claims ..................................... 8

    E.  Plaintiffs' Federalism Argument Was Rejected in Dabit ........................... 9

II.  PLAINTIFFS' NON-FRAUD CLAIMS ARE PREEMPTED BY THE MARTIN ACT ............................................................................................ 9

III.  PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW CLAIMS ..... 10

    A.  BVI Law Governs Shareholder Standing under the Internal Affairs Doctrine ......................................................................................... 10

    B.  The BVI's Rule Against Reflective Loss Bars Plaintiffs' Claims .............. 13

    C.  Plaintiffs Lack Standing Under New York Law ......................................... 17

CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 78bb(f)(1) ............................................................................................................ 2, 8

**U.S. Cases**

ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,
957 F. Supp. 1308 (S.D.N.Y. 1997) ....................................................................................... 13

ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,
No. 96 Civ. 2978, 1997 WL 317365 (S.D.N.Y. June 12, 1997) .............................................. 14

Ackert v. Ausman,
218 N.Y.S.2d 814 (N.Y. Sup. Ct. 1961) ................................................................................... 11

Anwar v. Fairfield Greenwich Ltd.,
728 F. Supp. 2d 354 (S.D.N.Y. 2010) .................................................................................... 9-10

Anwar v. Fairfield Greenwich Ltd.,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................................................................................... passim

Assured Guar. (UK) Ltd. v. J.P. Morgan Invest. Mgmt Inc.,
No. 603755/08, --- N.Y.S.2d ---, 2010 WL 4721590 (1st Dep't Nov. 23, 2010) .............. 10

Backus v. Conn. Cmty. Bank, N.A.,
No. 3:09-CV-1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009) ........................................ passim

Barron v. Igolnikov,
No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) ............................................ 4, 6

Bruhl v. Kingate Global Fund Ltd.,
No. 601526/2009, slip op. (N.Y. Sup. Ct. Jan. 25, 2010) . ...................................................... passim

Carroll v. Weill,
767 N.Y.S.2d 627 (1st Dep't 2003) ............................................................................................ 11

Castellano v. Young & Rubicam, Inc.,
257 F.3d 171 (2d Cir. 2001) .................................................................................................... 9-10

CMMF, LLC v. J.P. Morgan Invest. Mgmt. Inc.,
--- N.Y.S.2d ---, 78 A.D.3d 562 (1st Dep't 2010) ................................................................. 10

Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP,
15 N.Y.3d 264 (2010) ............................................................................................................. 18

**Page(s)**

CTS Corp. v. Dynamics Corp. of Am.,
481 U.S. 69 (1987) ........................................................................................................... 10

Dommert v. Raymond James Fin. Servs., Inc.,
No. 06-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ................................................... 3

Finkelstein v. Warner Music Grp. Inc.,
820 N.Y.S.2d 264 (1st Dep't 2006) ...................................................................................... 11

Hirsch v. Arthur Andersen & Co.,
72 F.3d 1085 (2d Cir. 1995) ................................................................................................. 18

Horattas v. Citigroup Fin. Mkts. Inc.,
532 F. Supp. 2d 891 (W.D. Mich. 2007) ................................................................................ 3

In re Beacon Assocs. Litig.,
No. 09 Civ. 777, 2010 WL 3895582 (S.D.N.Y. Oct. 5, 2010) ............................................... 4, 6, 10

In re Bernard L. Madoff Inv. Sec. LLC,
424 B.R. 122 (Bankr. S.D.N.Y. 2010) ................................................................................... 16

In re BP p.l.c. Derivative Litig.,
507 F. Supp. 2d 302 (S.D.N.Y. 2007) ................................................................................... 12

In re Granite Partners, L.P.,
194 B.R. 318 (Bankr. S.D.N.Y. 1996) ................................................................................... 12, 15

In re Hampton Hotel Investors, L.P.,
289 B.R. 563 (Bankr. S.D.N.Y. 2003) ................................................................................... 18

In re J.P. Jeanneret Assocs., Inc.,
No. 09 Civ. 3907, 2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) ............................................. passim

In re Scudder Mut. Funds Fee Litig.,
No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) .............................. 17

In re Tremont Sec.,
703 F. Supp. 2d 362 (S.D.N.Y. 2010) ................................................................................... 10

Kircher v. Putnam Funds Trust,
403 F.3d 478 (7th Cir. 2005) ................................................................................................ 2

Kirschner v. KPMG LLP,
15 N.Y.3d 446 (2010) ......................................................................................................... 18

**Page(s)**

Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.,
No. 09 Civ. 3708, 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) ...................................... 10

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
547 U.S. 71 (2006) ...................................................................................................... passim

Morrison v. Nat'l Australia Bank Ltd.,
130 S. Ct. 2869 (2010) ......................................................................................................... 1-2

Newman v. Family Mgmt. Corp.,
No. 08 Civ. 11215, 2010 WL 4118083 (S.D.N.Y. Oct. 20, 2010) ........................................ 4, 6

Norlin Corp. v. Rooney, Pace Inc.,
744 F/2d 255 (2d Cir. 1984).............................................................................................. 12

Pandozy v. Segan,
518 F.Supp. 2d 550 (S.D.N.Y. 2007) ...................................................................................... 16

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
No. 05 Civ. 9016, 2010 WL 546964 (S.D.N.Y. Feb. 16, 2010) ............................................... 6

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...................................................................................... 12

Potter v. Janus Inv. Fund,
483 F. Supp. 2d 692 (S.D. Ill. 2007)........................................................................................ 4

Primavera Familienstiftung v. Askin,
No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ........................................... 13, 18

Pro Bono Invs., Inc. v. Gerry,
No. 03 Civ. 4347, 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ...................................... 10

Prof'l Mgmt. Assocs., Inc. Emps.' Profit Sharing Plan v. KPMG LLP,
335 F.3d 800 (8th Cir. 2003)..................................................................................................... 9

Romano v. Kazacos,
609 F.3d 512 (2d Cir. 2010)............................................................................................ passim

Roselink Investors, L.L.C. v. Shenkman,
386 F. Supp. 2d 209 (S.D.N.Y. 2004) ...................................................................................... 11

Rowinski v. Salomon Smith Barney Inc.,
398 F.3d 294 (3d Cir. 2005)....................................................................................................... 8

**Page(s)**

Saltz v. First Frontier, LP,
No. 10 Civ. 964, 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010).............................................. 10

San Diego Cnty. Emps. Ret. Ass'n v. Maounis,
No. 07 Civ. 2618 (DAB), 2010 WL 1010012 (S.D.N.Y. Mar. 15, 2010)............................... passim

Segal v. Fifth Third Bank, N.A.,
581 F.3d 305 (6th Cir. 2009)................................................................................................ 2

Seghers v. Thompson,
No. 06 Civ. 308 (RMB), 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006)............................... 11

Siepel v. Bank of Am., N.A.,
526 F.3d 1122 (8th Cir. 2008)............................................................................................. 3

Spencer v. Wachovia Bank, N.A.,
No. 05-81016, 2006 WL 3408043 (S.D. Fla. May 10, 2006)................................................ 3

Stephenson v. Citco Group Ltd.,
700 F. Supp. 2d 599 (S.D.N.Y. 2010) ................................................................................. 11

U.S. Mortg., Inc. v. Saxton,
494 F.3d 833 (9th Cir. 2007)................................................................................................ 3-4

VantagePoint Venture Partners 1996 v. Examen, Inc.,
871 A.2d 1108 (Del. Sup. 2005) .......................................................................................... 10-11

Vaughn v. LJ Int'l, Inc.,
94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009) .......................................................................... 14

Vincel v. White Motor Corp.,
521 F.2d 1113 (2d Cir.1975)................................................................................................ 11

W. Palm Beach Police Pension Fund v. Collins Capital Low Volatility
Performance Fund II, Ltd.,
No. 09-80846-CIV, 2010 WL 2949856 (S.D. Fla. July 26, 2010) ....................................... 13, 17

Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP,
09 Civ. 1540, 2010 WL 4457322 (S.D.N.Y. Nov. 2, 2010) ................................................. 4, 6

**Foreign Cases**

Day v. Cook,
[2002] 1 BCLC 1 ................................................................................................................. 15

**Page(s)**

Gardner v. Parker
[2004] EWCA Civ 781 ............................................................................................................ 16

Giles v. Rhind,
[2003] EWCA Civ 1428 .......................................................................................................... 16

Johnson v. Gore Wood & Co. (A Firm),
[2002] 2 AC 1 ...................................................................................................................... passim

Prudential Assurance v. Newman Industries,
[1982] 1 Ch. 204 .................................................................................................................... 17

Webster v. Sandersons Solicitors,
[2009] PNLR 37 ...................................................................................................................... 16

Pursuant to this Court's Order, all defendants jointly submit this brief on three dispositive issues requiring the dismissal of the entire action. See Jan. 28, 2011 Order. Each of plaintiffs' common law claims, which are all based on misrepresentations coinciding with transactions in covered securities, is precluded by the Securities Litigation Uniform Standards Act ("SLUSA") and should be dismissed. Preemption is also required by New York's Martin Act as to the non-fraud based common law claims. Finally, even if plaintiffs' claims are not precluded or preempted, plaintiffs' claims are by and large derivative claims they have no standing to assert.

## I.    ALL OF PLAINTIFFS' CLAIMS ARE PRECLUDED BY SLUSA[1]

### A.    Morrison Creates No SLUSA Loophole for Foreign Plaintiffs

In Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71 (2006), the Supreme Court adopted a "broad construction" of SLUSA, holding that the statute bars all state law-based class actions that allege fraud "'coincid[ing]' with a securities transaction—whether by the plaintiff or by someone else." Id. at 85. As demonstrated in the defendants' moving briefs, this holding bars all of plaintiffs' claims here. See, e.g., Tremont Mov. Br. at 14-15. While plaintiffs mention Dabit in their brief, they argue that another decision of the Supreme Court, Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), has effectively created an exception to SLUSA for foreign claimants such as plaintiffs. Pl. Br. at 39-40. This argument is meritless and fails to withstand analysis.

In Morrison, the Supreme Court acknowledged the "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" 130 S. Ct. at 2877 (citation omitted). Finding no such expression of Congressional intent with respect to Section 10(b) of the Exchange Act, the Court held that Section 10(b) does not apply extraterritorially and plaintiffs therefore had no private right of

---

[1] Capitalized terms have the same meanings as in the Tremont Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Tremont Mov. Br.") or Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motions of the Kingate Defendants To Dismiss the Amended Consolidated Class Action Complaint ("Pl. Br.").

action under the statute to challenge allegedly fraudulent securities transactions occurring abroad. Id. at 2888.  That holding has no bearing here for at least two reasons:  (i) this case presents no question of whether plaintiffs may assert a private right of action under Section 10(b); and (ii) defendants do not seek to apply SLUSA, the Exchange Act or any other law extraterritorially.[2]  Rather, by their motions, defendants seek to apply SLUSA to preclude plaintiffs from maintaining a putative "class action . . . [in] Federal court" in the United States.  15 U.S.C. § 78bb(f)(1).

Accordingly, plaintiffs' admitted inability to assert any claim under Section 10(b) does nothing to alter the conclusion that their remaining state law claims are precluded by SLUSA.  The statute "is not confined to knocking out state-law claims by investors who have winning federal claims, as plaintiffs suppose.  It covers both good and bad securities claims—especially bad ones." Kircher v. Putnam Funds Trust, 403 F.3d 478, 484 (7th Cir. 2005) (emphasis in original), vacated on other grounds, 547 U.S. 633 (2006); see also Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 312 (6th Cir. 2009) (rejecting argument that SLUSA prohibits claims only if the factual allegations otherwise give rise to an actionable claim under federal securities laws), cert. denied, 130 S. Ct. 3326 (2010); In re J.P. Jeanneret Assocs., Inc., 09 Civ. 3907, 2011 WL 335594, at *33 (S.D.N.Y. Jan. 31, 2011) ("The preclusion of the Class' state law claims is . . . not a function of the viability of its direct action claims . . . under the federal securities laws.").

### B.    Dabit Rejected Any Requirement that Plaintiffs Themselves Purchase or Sell Covered Securities

Plaintiffs further argue that SLUSA is inapplicable here because they themselves did not purchase any "covered security," and are basing their claims on their purchases of shares of the Funds, both BVI companies.  Pl. Br. at 40.  The Supreme Court squarely rejected essentially the same argument, however, in Dabit.  See 547 U.S. at 85 ("[I]t is enough that the fraud alleged 'coincide'

---

[2] SLUSA covers "class action[s] . . . in any State or Federal court" of the United States.  15 U.S.C. § 8bb(f)(1). Defendants do not seek to apply SLUSA to, for example, actions pending in the British Virgin Islands or Bermuda, where other suits arising out of the management of the Funds have been filed.

with a securities transaction—whether by the plaintiff or by someone else.").

Moreover, when deciding this issue, nearly every court has applied Dabit to conclude that SLUSA bars claims alleging deception in the purchase or sale of covered securities for the direct or indirect benefit of plaintiffs, regardless of whether the plaintiffs themselves were parties to those transactions.  For example, in Siepel v. Bank of America, N.A., 526 F.3d 1122 (8th Cir. 2008), the court applied SLUSA to bar claims challenging a bank's alleged non-disclosure of information concerning the manner in which it would invest assets held in trust for plaintiffs.  Since the non-disclosure coincided with the bank's purchase of covered securities on behalf of the trust, the court ruled that plaintiffs' claims were precluded by SLUSA, rejecting the argument that the bank's non-disclosure failed to satisfy the "in connection with" requirement, as the non-disclosure "did not relate to a decision [by plaintiffs] whether to purchase a security."  Id. at 1127; see also Dommert v. Raymond James Fin. Servs., Inc., No. 06-102, 2007 WL 1018234, at **10-12 (E.D. Tex. Mar. 29, 2007) (SLUSA barred claims that defendant failed to disclose fees received from third party advisers who transacted in covered securities on plaintiffs' behalf); Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 WL 3408043, at **6-7 (S.D. Fla. May 10, 2006) (SLUSA barred trust beneficiaries' claims alleging defendant bank improperly invested trust assets in covered securities).

Courts have reached the same conclusion in other cases involving allegedly fraudulent transactions that coincide with purchases and sales of covered securities by investors other than the plaintiff.  For example, in Horattas v. Citigroup Financial Markets Inc., 532 F. Supp. 2d 891, 902-03 (W.D. Mich. 2007), the court found that SLUSA barred claims alleging that defendants had misappropriated plaintiffs' funds to enable defendants to make unauthorized purchases of covered securities for defendants' own benefit, even if "the plaintiffs themselves did not buy or sell any securities."  See also U.S. Mortg., Inc. v. Saxton, 494 F.3d 833, 844 (9th Cir. 2007) (SLUSA precluded claims challenging allegedly fraudulent loan agreements where the same alleged

3

misstatements likely induced other parties to purchase covered securities), <u>overruled on other grounds by</u> <u>Proctor v. Vishay Intertechnology, Inc.</u>, 584 F.3d 1208 (9th Cir. 2009); <u>Potter v. Janus Inv. Fund</u>, 483 F. Supp. 2d 692, 702-03 (S.D. Ill. 2007) (SLUSA precluded negligence and breach of fiduciary duty claims alleging that defendants permitted third parties to "engage in a pattern of market timing trades in shares" in mutual funds after plaintiffs had invested in those funds).

Consistent with this great weight of authority, four judges in this Circuit, in six written opinions, have found that SLUSA bars claims indistinguishable from those made by plaintiffs here— i.e., claims that defendants misrepresented (i) the investment strategy Madoff would employ on behalf of pooled investment vehicles in which plaintiffs invested and (ii) the extent to which defendants would monitor Madoff's investment activity.  <u>See</u> <u>Jeanneret</u>, 2011 WL 335594, at *33; <u>Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP</u>, 09 Civ. 1540, 2010 WL 4457322, at *2-3 (S.D.N.Y. Nov. 2, 2010); <u>Newman v. Family Mgmt. Corp.</u>, 08 Civ. 11215, 2010 WL 4118083, at *9-10 (S.D.N.Y. Oct. 20, 2010) (to be published in F. Supp. 2d); <u>In re Beacon Assocs. Litig.</u>, 09 Civ. 777, 2010 WL 3895582, at *33-35 (S.D.N.Y. Oct. 5, 2010) (to be published in F. Supp. 2d); <u>Barron v. Igolnikov</u>, 09 Civ. 4471, 2010 WL 882890, at **3-5 (S.D.N.Y. Mar. 10, 2010); <u>Backus v. Conn. Cmty. Bank, N.A.</u>, 3:09-CV-1256, 2009 WL 5184360, at **4-10 (D. Conn. Dec. 23, 2009).

### C.    SLUSA's "In Connection With" Requirement Is Met Here

Plaintiffs also argue that the "in connection with" requirement of SLUSA is not satisfied here, arguing that defendants have tried "to expand <u>Dabit</u>'s 'coincide with' standard beyond all bounds of reason[ ]."  Pl. Br. at 42.  According to plaintiffs, they are insulated from SLUSA preclusion because they "have never alleged that they had contact with [Madoff], nor that they relied on anyone other than the Defendants in purchasing and holding the Funds' securities."[3]  <u>Id.</u> at 43.  But this is merely a

---

[3]  In making this argument, plaintiffs also repeat their contention, discussed above, that SLUSA does not preclude their claims "'[b]ecause plaintiffs purchased shares in hedge funds, rather than covered securities.'" Pl. Br. at 43 (citation omitted).  As shown above, this argument is unavailing given the Complaint's

4

variation on another argument rejected by the Supreme Court in <u>Dabit</u>—namely, that to satisfy the "in connection with" requirement, a complaint must allege that plaintiff purchased a covered security from, or sold it to, the defendant who made an alleged misrepresentation. <u>See</u> 547 U.S. at 84.

In <u>Dabit</u>, plaintiffs nowhere alleged that they purchased covered securities from or sold them to Merrill Lynch (or any other defendant). <u>See generally</u> 547 U.S. 71. Rather, they alleged that misleading analyst reports published by Merrill induced them to hold covered securities sold by third parties unaffiliated with Merrill. <u>See id.</u> at 75-76. Although plaintiffs alleged no deception by any of those securities sellers, the Supreme Court nevertheless ruled that plaintiffs had alleged fraud "in connection with" the purchase or sale of covered securities as their claim was premised on Merrill's alleged use of misleading analyst reports to manipulate the prices at which investors <u>other than plaintiffs</u> transacted in securities at a time when plaintiffs were holders of those securities. <u>Id.</u> at 85.

In this case, the gravamen of the Complaint is that defendants deceptively induced plaintiffs to invest in hedge funds established for the purpose of purchasing and selling covered securities through Madoff. Thus, here, as in <u>Dabit</u>, SLUSA's "in connection with" requirement is satisfied because "plaintiff's claims 'turn on injuries caused by acting on misleading investment advice'—that is, . . . plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of [covered] securities." <u>Romano v. Kazacos</u>, 609 F.3d 512, 522 (2d Cir. 2010) (citations omitted); <u>see also Dabit</u>, 547 U.S. at 85 ("The requisite showing, in other words, is 'deception in connection with the purchase of any security,' not deception of an identifiable purchaser or seller.").

These principles repeatedly have been applied by courts in this Circuit to conclude that Madoff-related claims are precluded under SLUSA even where, as here, plaintiffs' exposure to Madoff was indirect, e.g., through hedge funds that placed assets with BMIS. As explained by the court in <u>In re Beacon Associates</u> in language equally applicable here:

---

allegations of deception in connection with Madoff's purported purchases and sales of covered securities, allegations that are integral to every count in the Complaint.

5

Plaintiffs allege misrepresentations in the [fund's offering memorandum] regarding "the investment strategies and objectives of the Beacon Fund." Although the shares of the Beacon Fund are not covered securities, the objective of the fund was to manage Plaintiffs' investment using a strategy that inevitably included the purchase and sale of covered securities. Furthermore, Plaintiffs allege false and misleading statements and omissions regarding "Defendants' due diligence and monitoring of Madoff and BMIS," including "the performance and feasibility of Madoff's purported trading strategy" utilizing indisputably covered securities. These allegations are sufficient to meet SLUSA's broad requirement of a misrepresentation or omission in connection with the purchase or sale of a covered security.

2010 WL 3895582, at *34 (emphasis added); see also Jeanneret, 2011 WL 335594, at *33 (adopting Beacon Associates); Wolf Living Trust, 2010 WL 4457322, at *3; Newman, 2010 WL 4118083, at *10; Barron, 2010 WL 882890, at *5; Backus, 2009 WL 5184360, at *8.[4]

Ignoring this weight of authority, plaintiffs rely heavily on a single case, Anwar v. Fairfield Greenwich Ltd. ("Anwar II"), 728 F. Supp. 2d 372 (S.D.N.Y. 2010). See Pl. Br. at 43-45. There the court found that claims based on defendants' failure to detect Madoff's securities fraud were not precluded by SLUSA. Respectfully, the holding in Anwar II is contrary to the Supreme Court's ruling in Dabit and the Second Circuit's ruling in Romano and should not be followed here.

In Romano, the Second Circuit held that SLUSA's broad and flexible "in connection with" requirement is satisfied whenever the alleged misstatements and transactions at issue "necessarily involve," "necessarily allege" or "rest on" the purchase or sale of a covered security. 609 F.3d at 522. The court in Anwar II did not apply this test. Instead, the Anwar II court applied a different standard, concluding that SLUSA did not preclude plaintiffs' claims because "multiple layers" separated Madoff's purchases of covered securities and plaintiffs' purchases of interests in hedge funds that fed into Madoff, such that plaintiffs' hedge fund investments "did not occur instantaneously" with

---

[4] Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, No. 05 Civ. 9016, 2010 WL 546964 (S.D.N.Y. Feb. 16, 2010), is not to the contrary and plaintiffs' reliance on that case is misplaced. There, the court expressly noted that the facts before it made the case distinguishable from decisions in the Madoff-related actions cited above because, in the Madoff actions (as in this case), the "heart" of the alleged fraud rested with covered securities Madoff purported to purchase and sell. Id. at *3.

Madoff's investment activity on behalf of the funds. Anwar II, 728 F. Supp. 2d at 398.[5]

In Romano, the Second Circuit considered—and rejected—an analysis similar to the "multiple layers" test applied by the court in Anwar II. In Romano, plaintiffs argued that the misrepresentations at issue did not relate to the purchase or sale of covered securities but, rather, pertained solely to "matters such as financial and retirement planning and tax advice, all of which [were] divorceable from [plaintiffs'] ultimate purchase of securities." 609 F.3d at 522. According to the plaintiffs, the alleged misrepresentations regarding retirement planning were "too far" removed from their subsequent investment of retirement benefits in covered securities to trigger SLUSA preclusion. Id. at 522-23. The Second Circuit disagreed, holding that the complaint alleged "a string of events that were all intertwined" and "necessarily involve[d]," "necessarily allege[d]" or "rest[ed] on" the purchase or sale of covered securities. See id. at 522, 524. Had the Anwar II court properly applied Romano, it necessarily would have found plaintiffs' claims precluded by SLUSA because the complaint in Anwar II (like the Complaint in this case) plainly alleged a "string of events" that necessarily involved and rested on Madoff's purported purchase and sale of covered securities.

The Second Circuit in Romano also rejected the sort of temporal analysis employed by the court in Anwar II. In Romano, certain plaintiffs argued that an eighteen month time lag between the defendants' alleged misrepresentations and their ultimate purchase of covered securities stretched SLUSA's "in connection with" language beyond the breaking point. See id. at 524. The Second Circuit held that the alleged time lag was irrelevant under SLUSA, finding that Dabit "does not pivot on temporal limitations." Id. The court therefore "decline[d] to find that the passage of eighteen

---

[5] The decision in Anwar II rested, in part, on the court's view that a policy objective of SLUSA—precluding plaintiffs from trying to circumvent the pleading requirements for federal securities claims by resorting to common law allegations—was not implicated because the Anwar II plaintiffs did, in fact, assert federal securities claims. See 728 F. Supp. 2d at 399. Even if policy objectives could trump the plain terms of a statute, the result would be the same here. As the Court is aware, plaintiffs withdrew their securities claims at the eleventh hour (after seeing defendants' briefs demonstrating their insufficiency) and are, indeed, seeking resort to exclusively state law claims. Thus, dismissal here would serve SLUSA's policy objective.

months between the alleged fraud and the purchase or sale of securities necessarily defeats SLUSA's 'in connection with' requirement." Id.   Consequently, it is of no moment for SLUSA purposes that Madoff's purported transactions in covered securities for the Funds may not have occurred "simultaneously" with plaintiffs' investments in those Funds. Anwar II, 728 F. Supp. 2d at 398.

### D.       SLUSA Applies to Plaintiffs' Non-Fraud Claims

Plaintiffs further argue that even if their claims premised on allegations of misrepresentation and omission are precluded by SLUSA (which they are, for the reasons stated above), the remaining counts of their Complaint, which supposedly omit such allegations, are not precluded by the statute. Pl. Br. at 45-46.  This argument ignores the plain text of SLUSA, which makes no reference to the preclusion of individual "claims" but, rather, precludes any "covered class action" alleging misrepresentations in connection with purchases or sales of covered securities.  15 U.S.C. § 78bb(f)(1) (emphasis added); see also Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 305 (3d Cir. 2005) (language of the statute "suggest[s] that if any claims alleged in a covered class action are preempted, the entire action must be dismissed").

Even if a count-by-count analysis were appropriate, it would not assist plaintiffs here because every count of their Complaint incorporates by reference all of the Complaint's preceding paragraphs, including dozens of paragraphs identifying purported misrepresentations and omissions.  Amended Consolidated Class Action Complaint, dated May 18, 2010 ("AC") ¶¶ 268, 273, 278, 293, 298, 303, 306, 309, 320, 326, 338, 342, 351, 360, 364, 375, 381, 392.  Thus, every count of the Complaint alleges misrepresentations or omissions and is precluded by the plain terms of SLUSA.  See Backus, 2009 WL 5184360, at *11 ("Incorporating allegations of fraud made in support of other claims is grounds for dismissal of this [breach of contract claim]."); see also Romano, 609 F.3d at 521 (negligence, breach of fiduciary duty and breach of contract claims precluded because "[t]he amended complaints alleged at various places that defendants made misrepresentations and omissions of

8

material fact" (emphasis added)); Rowinski, 398 F.3d at 300, 305 (SLUSA preclusion "does not turn on whether allegations are characterized as . . . essential elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another."); Prof'l Mgmt. Assocs., Inc. Emps.' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003) (negligence claim precluded because "allegations regarding . . . misrepresentations and omissions are incorporated by reference in the negligence count").

### E.   Plaintiffs' Federalism Argument Was Rejected in <u>Dabit</u>

Last, and certainly least, plaintiffs argue that it would be "an affront to federalism to preempt [their] state law claims" pursuant to SLUSA because their claims relate to investments in hedge funds that are not subject to federal regulation. Pl. Br. at 48. This argument is foreclosed, however, by the Supreme Court's ruling in Dabit that "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." 547 U.S. at 87; see also Romano, 609 F.3d at 519 n.2. Here, as in Dabit, SLUSA preclusion does not offend principles of federalism given that plaintiffs may pursue their purported state law claims individually, should they choose to do so.

## II.   PLAINTIFFS' NON-FRAUD CLAIMS ARE PREEMPTED BY THE MARTIN ACT

As plaintiffs acknowledge, the law in the Second Circuit is clear that all state law, non-fraud claims brought by investors, including Madoff-related claims such as those plaintiffs assert here, are precluded under the Martin Act. See Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001). See, e.g., Pl. Br. at 48-55. In fact, every court in this Circuit to consider this issue, with one exception (Anwar v. Fairfield Greenwich Ltd. ("Anwar I"), 728 F. Supp. 2d 354 (S.D.N.Y. 2010)),

9

has followed Second Circuit precedent and dismissed these state law claims.[6]  Although certain New

York State decisions have recently held otherwise,[7] those opinions are not binding on this Court and

represent a shift from a rule that has been applied "almost without exception." Pro Bono Invs., Inc. v.

Gerry, 03 Civ. 4347, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005).  This Court should

therefore follow the Second Circuit precedent unless and until either the Second Circuit or the New

York Court of Appeals holds that the law has, in fact, changed.  See Jeanneret, 2011 WL 335594, at

*33 (holding that the Second Circuit's decision in Castellano is controlling and, accordingly, the

Martin Act preempts all non-scienter based state law claims arising out of the Madoff scandal).

Plaintiffs' non-fraud claims should therefore be dismissed for this reason as well.  See id.; Beacon,

2010 WL 3895582, at **37-38.

## III.    PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW CLAIMS

### A.    BVI Law Governs Shareholder Standing under the Internal Affairs Doctrine

In "deciding issues of 'shareholder standing,' that is, whether claims should be brought

directly or derivatively, courts must look to the law of the fund's state of incorporation." San Diego

Cnty. Emps. Ret. Ass'n v. Maounis, 07 Civ. 2618 (DAB), 2010 WL 1010012, at *19 (S.D.N.Y. Mar.

15, 2010) (emphasis added) (citations omitted); see also Saltz v. First Frontier, LP, 10 Civ. 964, 2010

WL 5298225, at *10 (S.D.N.Y. Dec. 23, 2010).  As the Funds are incorporated in the BVI, AC ¶¶ 48-

49, BVI law governs shareholder standing, a result mandated by constitutional principles,  CTS Corp.

v. Dynamics Corp. of Am., 481 U.S. 69, 90 (1987), that plaintiffs cannot escape.  See also

VantagePoint Venture Partners 1996 v. Examen, Inc., 871 A.2d 1108, 1113 (Del. Sup. 2005).

---

[6]  See, e.g., Jeanneret, 2011 WL 335594, at * 33; Beacon, 2010 WL 3895582, at **37-38; Meridian Horizon
Fund, LP v. Tremont Grp. Holdings, Inc., 09 Civ. 3708, 2010 WL 1257567, at *8 (S.D.N.Y. Mar. 31,
2010) (holding that the Martin Act preempts non-fraud claims in feeder fund cases); In re Tremont Sec.,
703 F. Supp. 2d 362, 373 (S.D.N.Y. 2010) (same).

[7]  See CMMF, LLC v. J.P. Morgan Invest. Mgmt. Inc., --- N.Y.S.2d ---, 78 A.D.3d 562 (1st Dep't 2010);
Assured Guar. (UK) Ltd. v. J.P. Morgan Invest. Mgmt. Inc., No. 603755/08, --- N.Y.S.2d ---, 2010 WL
4721590 (1st Dep't Nov. 23, 2010).

Plaintiffs' cases do not support their incorrect argument,[8] Pl. Br. at 22, that the internal affairs doctrine is somehow inapplicable to claims against third parties. The case law is to the contrary. See, e.g., Stephenson v. Citco Grp. Ltd., 700 F. Supp. 2d 599, 608 (S.D.N.Y. 2010) (applying internal affairs doctrine to claims against fund's third-party service providers); Maounis, 2010 WL 1010012, at *10 (applying internal affairs doctrine and dismissing as derivative claims against third-party manager). Regardless of the target of the claims, the internal affairs doctrine is applied because permitting shareholder-plaintiffs to assert corporate claims would directly alter the allocation of responsibilities and power between the Funds and their shareholders. See Livshiz Decl. Ex. E (Bruhl v. Kingate Mgmt Ltd.), at 10-11 (liquidators have power to perform all acts on behalf of the Funds).[9]

Plaintiffs are also incorrect that the law of the place of incorporation applies only if a conflict is identified between BVI and New York law. Pl. Br. at 24-25. The internal affairs doctrine must be followed—and courts again and again do so without first identifying a conflict. See, e.g., Seghers v. Thompson, 06 Civ. 308, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (applying the law of the place of incorporation, there BVI law, to shareholder standing issue without first finding a conflict); Finkelstein v. Warner Music Grp. Inc., 820 N.Y.S.2d 264, 266 (1st Dep't 2006) (same); Maounis, 2010 WL 1010012, at *19 (same).[10]

---

[8] For example, in Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004), plaintiffs were not shareholders, so the court did not examine issue of shareholder standing. And while plaintiffs cite VantagePoint, that case reaffirmed the mandatory application of the internal affairs doctrine. The court did not consider the applicability of the internal affairs doctrine to shareholders' claims against third parties. In Ackert v. Ausman, 218 N.Y.S.2d 814, 817-18 (N.Y. Sup. Ct. 1961), the shareholder was proceeding derivatively. To read Ackert as plaintiffs urge would render it inconsistent with later appellate precedent. See Carroll v. Weill, 767 N.Y.S.2d 627 (1st Dep't 2003) (applying internal affairs doctrine, and noting the "paramount" interest of Delaware, the state of incorporation of Citigroup, to have its laws applied to determine derivative claims).

[9] The Funds' joint liquidators have in fact commenced an action in Bermuda against many of the defendants here. See Declaration of Dennis Dwyer, dated Feb. 10, 2011 ("Dwyer Decl.") ¶ 3; see also Declaration of Jodi Kleinick, dated Feb. 10, 2011 ¶ 4.

[10] In any event, there is a conflict between New York and BVI law on the issue of standing. Under New York law, even where shareholder losses are not "separate and distinct" from that of the company, shareholder-plaintiffs may bring a direct action if they allege a breach of an independent duty owed to them. See Vincel v. White Motor Corp., 521 F.2d 1113, 1118-19 (2d Cir.1975). Under, BVI law, however, the reflective loss rule, however, would bar such an action.

Finally, plaintiffs seek to substitute a general interest analysis for the internal affairs doctrine. Pl. Br. at 22-25. But, the internal affairs doctrine may be displaced in the extreme and rare case where plaintiffs establish the doctrine's public policy exception, which is available only if the relevant laws of the state of incorporation "are objectively 'immoral' or 'unjust'" or if another state has an overriding interest in the application of its own law. In re BP p.l.c. Derivative Litig., 507 F. Supp. 2d 302, 308-09 (S.D.N.Y. 2007) (finding no public policy exception to the internal affairs doctrine and dismissing shareholders' breach of fiduciary duty claim under British law for lack of standing). Neither exception applies here.[11] Pension Committee of the University Of Montreal Pension Plan v. Banc of America Securities, LLC ("Pension I"), 446 F. Supp. 2d 163 (S.D.N.Y. 2006), and Anwar II, heavily relied on by plaintiffs, demonstrate plaintiffs' failure. Unlike here, in Pension I, the funds' managers "conducted the day-to-day operations of the Funds from their offices in New York." 446 F. Supp. 2d at 194 (emphasis added).[12] Similarly, the Fairfield funds were managed from Fairfield Greenwich Group's offices in New York, where the funds' activities occurred. Anwar II, 728 F. Supp. 2d 372; cf. Maounis, 2010 WL 1010012, at *17-19 (tort choice of law analysis resulted in application of Connecticut law, where fund managers were located and alleged misrepresentations made). Here, of course, the Funds' Managers are in Bermuda, and there are no significant contacts between the Funds and New York. See Reply Mem. Of Law In Supp. Of Def. Citi Hedge Fund Services Ltd.'s

---

[11] Plaintiffs' reliance on Norlin v. Rooney, Pace Inc., 744 F.2d 255 (2d Cir. 1984), does not permit them to avoid the internal affairs doctrine. In Norlin, the Second Circuit found that Panama, the state of incorporation, had enacted legislation in which it "made a determination that its interest in Norlin's affairs is insufficient to warrant the application of Panamanian law to this dispute." 744 F.2d at 264. Panama having already relinquished authority to adjudicate the claims, the court then found that New York had sufficient contacts to give it a legitimate interest in regulating the corporate actions, including the company's principal place of business, executive offices, meetings of shareholders and directors, and trading of the company's stock on the NYSE. Id. The case is clearly inapposite. See Livshiz Decl. Ex. E at 6, 7 n.5, 8-9 (rejecting applicability of Norlin and applying BVI law to question of the Funds' standing to sue).

[12] Plaintiffs suggest that in Pension I the court found the internal affairs doctrine inapplicable because the two hedge funds were in bankruptcy. See Pl. Br. at 23. The law is the opposite: bankruptcy is not an exception to the internal affairs doctrine, which courts apply to determine who has standing to sue on behalf of bankrupt entities. See, e.g., In re Granite Partners, L.P., 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996).

Mot. To Dismiss The Am. Consolidated Class Action Compl. at 1-2.

### B.      The BVI's Rule Against Reflective Loss Bars Plaintiffs' Claims

As alleged in the Complaint, "The Funds had billions of dollars in assets, substantially all of which were invested with Madoff, and all of which are now lost." AC ¶ 3 (emphasis added); see also ¶ 14 (plaintiffs' losses are the value of "their investments"). The Complaint, brought on behalf of all shareholders in the Fund at the time the music stopped, AC ¶ 6, is thus by definition one for harm allegedly suffered by all shareholders from "diminution in the value of a shareholding," and so fits squarely within the reflective loss rule. Johnson v. Gore Wood & Co. (a firm), [2002] 2 AC 1, 36B-D ("no action lies at the suit of a shareholder" where action based on losses reflect damage to company).

Courts, applying the English law principles embodied in the reflective loss rule, consistently dismiss as barred the very claims alleged here—breach of fiduciary duty, aiding and abetting breach of fiduciary duties, negligence-based claims, and claims based on corporate contracts —i.e., claims of alleged corporate mismanagement that resulted in the decline of share value. See W. Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd., 09-80846-Civ, 2010 WL 2949856, at *3 (S.D. Fla. July 26, 2010) (dismissing shareholder claims against funds' investment advisor for breach of fiduciary duty and gross negligence as derivative under BVI law); ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1332 (S.D.N.Y. 1997) (noting that the "nub of the problem is that the investors' injury flows not from what happened to them . . . but from what happened to" the Funds, and dismissing breach of fiduciary duty claim as derivative) (internal quotations omitted); Primavera Familienstiftung v. Askin, 95 Civ. 8905, 1996 WL 494904, at *11 (S.D.N.Y. Aug. 30, 1996) (dismissing aiding and abetting breach of fiduciary duty and third party beneficiary breach of contract claims as derivative); see also Declaration of Anthony George Bompas QC, dated Nov. 4, 2010 ("Bompas Decl.") ¶ 53.4 (agreeing that plaintiffs' non-fraud claims offend the reflective loss rule); Reply Declaration of Simon Browne-Wilkinson, dated Feb. 10, 2011

13

("Wilkinson Reply") ¶¶ 43-48.

Nothing plaintiffs argue to escape the reflective loss rule has merit.

First, plaintiffs half-heartedly argue that the rule against reflective loss is "procedural" and therefore does not bar them from bringing the Funds' claims. Plaintiffs' own expert, Mr. Bompas, admits that the rule against reflective loss is a "part of the law of companies." Bompas Decl. ¶ 14; see also Reply Declaration of Narinder K. Hargun, dated Feb. 9, 2011 ("Hargun Reply") ¶¶ 53-56 (characterizing the reflective loss rule as substantive); Wilkinson Reply ¶¶ 10-12 (same); Affidavit of David Chivers QC, dated Feb. 10, 2011 ("Chivers Reply") ¶ 3; Reply Declaration of Barbara Dohmann QC on English, Bermuda and British Islands Law, dated Feb. 9, 2011 ("Dohmann Reply") ¶¶ 14-15, 23a; Johnson, [2002] AC1, 62E-63A ("The rule against reflective loss is a matter of principle; there is no discretion involved.").[13]

Second, and contrary to plaintiffs' arguments, Pl. Br. at 32, the reflective loss rule applies even where the Funds lack a viable cause of action to recover the alleged loss. See Hargun Reply ¶¶ 85-87; Dohmann Reply ¶ 22a. In dismissing the claims as barred by reflective loss, the court in Johnson made clear that the reflective loss rule will bar the shareholders' claims even if the company refuses, or tries but fails, to "make good [the shareholders'] loss." [2002] AC1, 62E-63A; see also Hargun Reply ¶¶ 85-87; Wilkinson Reply ¶ 18. Courts in New York have expressly recognized that under English law, even where the claim of the corporation lacks merit (either because of the *in pari delicto* or any other defense), the shareholder is not as a result vested with standing. See ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 96 Civ. 2978, 1997 WL 317365, at *4 (S.D.N.Y. June 12, 1997). The dispositive issue is not whether the Funds will ultimately succeed on their claims, but whether the

---

[13] Standing to sue is of course a substantive requirement. U.S. courts consistently apply even arguably procedural BVI law in determining whether plaintiffs have standing to sue. See Livshiz Decl., Ex. E (applying BVI's statutory requirement that plaintiffs bringing derivative action first get approval from the BVI High Court to dismiss a derivative action because they address substantive issues of standing to sue); Vaughn v. LJ Int'l, Inc., 174 Cal. App.4th 213, 221 (Ct. App. 2009) (same).

claims are theirs to assert in the first place.  See Hargun Reply ¶¶ 85-87; Dohmann Reply ¶ 22a.

Further, the fact that the Funds' claims supposedly differ in kind from those alleged by plaintiffs is of

no moment, as the operative issue is whether the plaintiffs' losses reflect that of the Funds, not

whether the Funds' claims are the same as those alleged by plaintiffs.  See Hargun Decl. ¶ 43; Hargun

Reply ¶ 70; Dohmann Decl. ¶¶ 50-52; Wilkinson Reply ¶ 35; see also Day v. Cook, [2002] 1 BCLC 1

(funds' claims to recover investors' losses trump those that can be brought by shareholders).

       Third, plaintiffs may not escape the reach of the reflective loss rule based on the specter of

"asymmetrical loss"—i.e. that shareholders who are allegedly "net losers" supposedly lost more that

the Funds themselves (because some shareholders were also "net winners" in that they redeemed

more than they invested).  Pl. Br. at 33.  At bottom, the application of the rule against reflective loss

does not depend on whether the shareholders will recover their investment in full.  See Hargun Reply

¶¶ 63-64 (the "correspondence" between the value of the company's claim and that of the shareholder

need not be exact); Wilkinson Reply ¶¶ 13-18, 42, 45-47.  In the insolvency context, shareholders are

generally not "made whole" as the assets of the corporation are used to pay the corporation's

creditors, prior to any payment being made to its shareholders.  See Hargun Reply ¶ 64; Wilkinson

Reply ¶ 18.  If correct, plaintiffs' argument means that the rule against reflective loss should not apply

in the context of bankrupt companies, a proposition lacking any support in the case law.  See, e.g., In

re Granite Partners, L.P., 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996) (finding that shareholders lacked

standing to pursue claims that belonged to a bankrupt Cayman fund).  To the contrary, the very

purpose of the reflective loss rule is that shareholders do not "recover at the expense of the company

and its creditors and other shareholders."  See Wilkinson Reply ¶ 18 (citing Johnson); Hargun Reply ¶

64.  Accordingly, the test is whether the loss that the plaintiffs suffered is "separate and distinct" from

the loss suffered by the company.  See Wilkinson Reply ¶¶ 14-17.  This test is not satisfied here,

where the "diminution in the value of a shareholding" is  attributable to the "depletion of the

company's assets"—i.e. that Madoff stole the Funds' assets. <u>Johnson</u>, [2002] 2 AC 1, 36B-D.

Moreover, plaintiffs' argument ignores that <u>this</u> Complaint is brought on behalf of "<u>all</u> shareholders in Kingate Global and Kingate Euro as of December 10, 2008," AC ¶ 238 (emphasis added), and plaintiffs' attempt to amend the Complaint in their opposition brief by redefining the class as only "net losers," Pl. Br. at 35 n.21, must be rejected. <u>See</u> <u>Pandozy v. Segan</u>, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007) ("it is 'axiomatic' that a complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

In any event, plaintiffs' reliance on <u>In re Bernard L. Madoff Inv. Sec. LLC</u>, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010), is misplaced. There, the court defined "net equity" for the purpose of calculating customer claims filed against the Madoff estate pursuant to the Securities Investor Protection Act—not to measure the worth of the Funds' tort claims against their service providers. Tellingly, by invoking the method by which the Funds' losses will be calculated—that is, the net equity method—as the way by which their own alleged losses should be calculated, plaintiffs only underscore the reflective (i.e., derivative) nature of these alleged losses.

<u>Fourth</u>, plaintiffs are wrong to assert that the Court can disregard the reflective loss rule based on an amorphous "practical justice" standard. Pl. Br. at 36. This purported exception is narrow, and applicable only where "(1) the company is unable to pursue its claim against the wrongdoer (2) by reason of (3) the wrong done to it by defendants." <u>See</u> Wilkinson Reply ¶ 20; Chivers Reply ¶¶ 4-7; Dohmann Reply ¶¶ 20, 23b; <u>Gardner v. Parker</u>, [2004] EWCA Civ. 781, 33.[14] Here, of course, there is no allegation (nor could there be) that any act by any defendant has prevented the Funds from pursuing their purported claims. <u>Cf.</u> Dwyer Decl. Thus, the <u>Gardner</u> exception is inapplicable.

<u>Finally</u>, recognizing the applicability of the reflective loss rule to their claims, plaintiffs try to

---

[14] Plaintiffs' discussion of <u>Giles v. Rhind</u>, [2003] EWCA (Civ) 1428, is irrelevant as <u>Giles</u> has since been superseded by the Court of Appeal's decision in <u>Gardner v. Parker</u>. Wilkinson Reply ¶ 20. Notably, <u>Gardner</u>'s limitation on <u>Giles</u> has recently been reaffirmed by the Court of Appeal's decision in <u>Webster v. Sandersons Solicitors</u>, [2009] PNLR 37 (per Lord Clarke MR).

cabin its effect by arguing that it is inapplicable to claims sounding in fraud or negligent misrepresentation. Pl. Br. at 31-32. English law cases such as Prudential Assurance make clear, however, that the rule is in fact applied to such claims. See Wilkinson Reply ¶¶ 30-36, 48; Hargun Reply ¶ 51. While plaintiffs claim that the losses caused by the alleged misrepresentations were somehow separate from the corporate loss, the two are inextricable, as any loss suffered by plaintiffs on account of the alleged misrepresentations derives from the depletion of the Funds' assets. See Wilkinson Reply ¶ 48 (alleged deceit on plaintiff in context of looted company not separate and distinct from company's loss); cf. Maounis, 2010 WL 1010012, at *20-21 (dismissing breach of fiduciary duty claim as derivative under Delaware law "because the misrepresentations that allegedly caused its losses injured not just Plaintiff, but the Fund as a whole.").

### C. Plaintiffs Lack Standing Under New York Law

Even under New York law, claims of the type asserted by plaintiffs, such as gross negligence, negligence, breach of fiduciary duty and aiding and abetting such breaches, and contract claims based on corporate contracts, are considered corporate claims, not direct shareholder claims. See Mem. Of Law In Supp. Of Def. Citi Hedge Fund Services Ltd.'s Mot. To Dismiss The Am. Consolidated Class Action Compl., dated July 19, 2010 ("Citi Hedge Br.") at 15-16n.9; accord Palm Beach, 2010 WL 2949856, at *3 ("By alleging that [the investment advisor] failed to conduct the necessary due diligence to discover the Madoff Ponzi scheme, Plaintiff has pled 'a paradigmatic derivative claim.'") (internal citations omitted). As under English law, such claims are based on losses sustained "through a diminution in the value of their stock," and so are derivative. In re Scudder Mut. Funds Fee Litig., 04 Civ. 1921 (DAB), 2007 WL 2325862, at *11 (S.D.N.Y. Aug. 14, 2007) (citation omitted); see also Maounis, 2010 WL 1010012, at *20-21 (dismissing breach of fiduciary duty, gross negligence, and misrepresentation-related claims as derivative under Delaware law); AC ¶¶ 3, 14; Citi Hedge Br. at 15 n.9. As discussed above, plaintiffs' attempt to recharacterize their injuries as somehow different from

that of the Funds because of the supposed asymmetry of their losses and those of the Funds, see Pl. Br. at 27, 33-35, must be rejected. See, supra, 15-16; see also Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP, 15 N.Y.3d 264, 272 (2010) (rejecting similar arguments and affirming dismissal of fraud claims because plaintiffs' only injury was for diminution in the value of their interests, which "they experienced . . . in their capacities as limited partners in common with all other limited partners.").

Plaintiffs incorrectly argue that because the Funds may be barred from asserting claims by the in pari delicto defense, the so-called "Wagoner Rule", Pl. Br. at 27-28, vests plaintiffs with standing. This is exactly backwards—to the extent the Funds' claims are barred, so too are any corporate claims asserted by the Funds' shareholders—i.e. the plaintiffs. See Primavera, 1996 WL 494904, at **13-14 (where corporation barred from asserting a claim by in pari delicto, so too are the shareholders). As recently explained by the New York Court of Appeals, the Wagoner rule is only part of New York law to the extent "it reflects the in pari delicto principle" which in New York is an affirmative defense that provides a basis for dismissing the complaint at the motion to dismiss stage, and not a way of obtaining standing. Kirschner v. KPMG LLP, 15 N.Y.3d 446, 484 n.3 (2010) (affirming the propriety of dismissing on a motion to dismiss fraud-related, negligence-related and breach of fiduciary duty claims against a company's third party service providers in the context of corporate fraud).[15]

## CONCLUSION

For the foregoing reasons, this Court should grant defendants' motions to dismiss, with prejudice, and grant such other and further relief as may be necessary and proper.

---

[15] Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093-95 (2d Cir. 1995) and the other Ponzi-related cases cited by plaintiffs, Pl. Br. at 28, are inapposite. In Hirsch, the debtor itself perpetrated the Ponzi scheme, and the case involved the question of a trustee's standing under Connecticut law. Moreover, plaintiffs' reliance on Hampton Hotels, Pl. Br. at 28, is misplaced, as that case sustained against the Wagoner rule claims by the Trustee for a bankrupt corporate debtor, and never articulated any principle that would vest equityholders with standing to pursue directly corporate claims, which is what plaintiffs seek to do here. 289 B.R. 563, 576-580 (Bankr. S.D.N.Y. 2003).

Dated:  New York, New York
February 10, 2011

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP

By:/s/ Carmine D. Boccuzzi
Carmine D. Boccuzzi
(cboccuzzi@cgsh.com)
David Y. Livshiz
(dlivshiz@cgsh.com)
Jerilin Buzzetta
(jbuzzetta@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for defendant Citi Hedge Fund Services Ltd.*

By:/s/ Seth M. Schwartz
Seth M. Schwartz
(Seth.Schwartz@Skadden.com)
Jason C. Vigna
(Jason.Vigna@Skadden.com)

Four Times Square
New York, New York 10036
Telephone: (212) 735-3000

*Attorneys for defendants Tremont (Bermuda) Limited and Tremont Group Holdings, Inc.*

DAVIS POLK & WARDWELL LLP

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Michael P. Carroll
Michael P. Carroll
James H.R. Windels
Michael S. Flynn
James W. Haldin
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facscimile: (212) 701-5800
michael.carroll@davispolk.com
james.windels@davispolk.com
michael.flynn@davispolk.com
james.haldin@davispolk.com

*Attorneys for defendant PricewaterhouseCoopers LLP*

By: /s/ Barry G. Sher
Barry G. Sher
(barrysher@paulhastings.com)
Jodi A. Kleinick
(jodikleinick@paulhastings.com)
Robin A. Arzón
(robinarzon@paulhastings.com)

75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6085

*Attorneys for defendants FIM Advisers LLP, FIM Limited, FIM (USA) Inc., Carlo Grosso and Federico Ceretti*

HOGAN LOVELLS US LLP

By: /s/ Sanford M. Litvack
    Sanford M. Litvack
    Dennis H. Tracey, III
    Lisa J. Fried

    875 Third Avenue
    New York, NY 10012
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    sandy.litvack@hoganlovells.com
    dennis.tracey@hoganlovells.com
    lisa.fried@hoganlovells.com

    *Attorneys for defendant*
    *PricewaterhouseCoopers, Chartered*
    *Accountants, a Bermuda partnership*

CHAFFETZ LINDSEY LLP

By: /s/ Peter R. Chaffetz
    Peter R. Chaffetz
    (peter.chaffetz@chaffetzlindsey.com)
    Charles J. Scibetta
    (charles.scibetta@chaffetzlindsey.com)
    Erin E. Valentine
    (erin.valentine@chaffetzlindsey.com)

    1350 Avenue of the Americas
    New York, NY 10019
    Telephone: (212) 257-6960

    *Attorneys for defendants Kingate*
    *Management Limited and Christopher*
    *Wetherhill*

COOLEY LLP

By: /s/ Laura Grossfield Birger
    Laura Grossfield Birger
    (lbirger@cooley.com)
    Karen K. Won (kwon@cooley.com)

    1114 Avenue of the Americas
    New York, New York 10036
    (212) 479-6000

    *Attorneys for defendant Michael G.*
    *Tannenbaum*

DAVIS & GILBERT LLP

By: /s/ Howard J. Rubin
    Howard J. Rubin
    (hrubin@dglaw.com)
    Bruce M. Ginsberg
    (bginsberg@dglaw.com)
    Cheryl M. Plambeck
    (cplambeck@dglaw.com)

    1740 Broadway
    New York, New York 10019
    (212) 468-4800

    *Attorneys for defendants Graham Cook,*
    *John Epps and Charles Sebah*

KOBRE & KIM LLP

By: /s/ Carrie A. Tendler
    Carrie A. Tendler
    (carrie.tendler@kobrekim.com)
    Jonathan D. Cogan
    (jonathan.cogan@kobrekim.com)
    Michael S. Kim
    (michael.kim@kobrekim.com)
    800 Third Avenue
    New York, NY 10022
    Telephone: (212) 488-1200
    Facsimile: (212) 488-1220

    *Attorneys for defendant Sandra Manzke*